IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 23, 2020 at Knoxville

## JAMES CURRIE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County
Nos. 2016-D-2399, -2276, -2313, -2218    Jennifer Smith, Judge**

### No. M2019-01132-CCA-R3-PC

The petitioner, James Currie, appeals the denial of his petition for post-conviction relief, which petition challenged his guilty-pleaded convictions of burglary of a motor vehicle (5 counts), fraudulent use of a credit card for a value more than $1,000 but less than $10,000 (2 counts), attempt to fraudulently use a credit card, and theft of property valued at more than $1,000 but less than $10,000, alleging that he was deprived of the effective assistance of counsel.  Discerning no error, we affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Daniel J. Murphy, Antioch, Tennessee, for the appellant, James Currie.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Doug Thurman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On June 2, 2017, the petitioner pleaded guilty to charges arising from four different cases.  In case 2016-D-2218, the petitioner pleaded guilty to burglary of a motor vehicle and attempted fraudulent use of a credit card for a value of more than $500 but less than $1,000.  In case 2016-D-2276, the petitioner pleaded guilty to fraudulent use of a credit card for a value of $1,000 or more but less than $10,000 and burglary of a motor vehicle.  In case 2016-D-2313, the petitioner pleaded guilty to two counts of burglary of a motor vehicle and one count of theft of property valued at $1,000 or more but less than $10,000.  In case 2016-D-2399, the petitioner pleaded guilty to burglary of a motor vehicle and fraudulent use of a credit card for a value of $1,000 or more but less than $10,000.  The

State dismissed 13 additional charges involving theft of property, vandalism, identity theft, and fraudulent use of a credit card. The plea agreement included a negotiated sentence of 12 years, with the manner of service to be determined by the trial court.

Because a transcript of the plea submission hearing is not included in the record on appeal, we glean the following facts from the pre-sentence investigation report. On April 3, 2016, the petitioner broke a window on Mary Hobeika's vehicle while it was parked at Percy Warner Park and took her purse from the vehicle. The petitioner then used Ms. Hobeika's credit cards to make unauthorized purchases at various locations. On April 9, 2016, the petitioner broke a window on Cassidy Calgren's vehicle while it was parked at Percy Warner Park and took her purse. The petitioner then attempted to use Ms. Calgren's credit cards at a Shell gas station and a Walgreens. On May 6, 2016, the petitioner broke a window on Leah Hawkins' vehicle while it was parked at Percy Warner Park and took her purse from the vehicle. The petitioner used Ms. Hawkins' bank card at two different Walgreens stores to make unauthorized purchases. On May 18, 2016, the petitioner broke a window on Laura Levin's vehicle and Molly McGrath's vehicle while they were parked at the NES Greenway trailhead and took the victims' purses from their vehicles. The petitioner then made several unauthorized purchases with Ms. McGrath's credit card at Walgreens.

The trial court ordered the petitioner to serve his 12-year sentence in confinement. On July 3, 2018, the petitioner filed a petition for post-conviction relief, alleging that he was deprived of the effective assistance of trial counsel.

At the January 22, 2019 evidentiary hearing, the petitioner testified that he retained trial counsel in December 2016. He then retained second counsel[1] with the understanding that both attorneys were working on his cases together. Second counsel represented the petitioner at his January 2017 arraignment because trial counsel could not be present. The petitioner acknowledged that trial counsel and second counsel met with him at the jail, but he asserted that they did not provide him with any discovery materials and did not discuss the evidence against him; rather, they only discussed the plea offer, encouraging him to accept it. He stated that he did not receive any discovery materials until August 2018.

The petitioner stated that he was tricked into pleading guilty by trial counsel because she told him that if he did not plead guilty, he would face a 25-year sentence if convicted at trial. Because he believed that trial counsel "wasn't gonna fight for me anyway, on my case," he felt as though he "really had no choice" but to take the plea offer.

[1] Because whether the two trial attorneys represented the petitioner independently or as co-counsel is at issue in this case, we will refer to the first-hired attorney as "trial counsel" and the second-hired attorney as "second counsel" to avoid confusion.

He said that trial counsel also told him that if he would "admit to it . . . and confess, that the judge will feel sorry for me and give me probation." He stated that he admitted to having committed the offenses at his sentencing hearing because he "couldn't do 25 years," and, because it was in his best interest to do so, he "really had no choice."

The petitioner stated that, at the time of his plea submission and sentencing hearings, he was unaware that the lead detective on his cases was in a romantic relationship with trial counsel. He did not learn about their relationship until June of 2018. The petitioner stated that if he had known about their relationship before his plea submission hearing, he would have fired trial counsel "because I would have known at the time she wasn't gonna fight for me because . . . of her [now] husband." He also said that he would not have pleaded guilty. He explained that when trial counsel first began representing him, "she was like one of the best lawyers" but in February of 2017, "she just start[ed] fading away. Like, she wasn't doing anything. She wasn't answering my family['s] phone calls or nothing like that." After February, trial counsel visited him at the jail only once. Because trial counsel was very accessible and communicative early in the representation, the petitioner speculated that "she figured out who was on my case, and then it just went away." The petitioner asserted that he was innocent of the offenses to which he pleaded guilty and that he would have gone to trial if trial counsel had not "lied to me the whole . . . time" and had provided him with discovery materials.

During cross-examination, the petitioner acknowledged that he had eight prior felonies and that he was familiar with the plea process prior to the proceedings in this case. He acknowledged that the trial court advised him of his rights and asked him if he was satisfied with his representation and that he replied under oath that he was satisfied. The petitioner stated that second counsel reviewed the plea petition with him at the jail, and trial counsel reviewed it with him again at the courthouse. He acknowledged that he lied about having committed the offenses at his plea submission hearing, reiterating that he "got tricked in saying that" by being told that if he did not accept the plea deal, "it was gonna be more time to serve."

The petitioner stated that he had two attorneys working on his cases because trial counsel "told me to . . . in case she got sick, like she always does." He said that trial counsel told him that she had "an illness problem," and she recommended second counsel to the petitioner. He recalled that trial counsel and second counsel were both present at the plea submission hearing and the sentencing hearing. The petitioner believed that trial counsel's husband was the lead detective in all four cases against him because he "saw his name in [the discovery materials] several times."

On redirect examination, the petitioner testified that upon review of his discovery materials, he learned that trial counsel's husband was the lead detective on his

-3-

cases, and he did not see anyone else named as lead detective in any of his cases. On recross-examination, the petitioner stated that in reviewing discovery materials, he did not understand that there was a different case summary for each of his four cases. On further direct examination, the petitioner said that the discovery materials indicated that, although there were four individual cases against him, one detective identified him as a suspect in a string of offenses against four different victims.

Trial counsel testified that the petitioner first hired her to represent him before his arraignment on one indictment in which Mary Tingler was the lead detective. After trial counsel agreed to represent the petitioner on one case, she learned that he had three other indictments pending. When she learned that the detective with whom she was in a relationship was the detective named on two of the indictments, she told the petitioner that she could not represent him on those cases because she had a conflict of interests. She told the petitioner that she could refund the money he had paid her, allowing him to hire another attorney to represent him on all four cases or she could continue to represent him on the cases without a conflict and he could retain a second attorney for the other cases. The petitioner elected to hire a second attorney for the cases on which trial counsel had a conflict. Trial counsel stated that she and the petitioner had a long conversation about the matter within a couple of days of her discovering the conflict.

The petitioner had three separate arraignments, and trial counsel stated that although she was in court for the arraignments, second counsel "probably did one of the arraignments" because trial counsel "did not represent [the petitioner] on at least two of the cases." Trial counsel said that she did not get the petitioner's written consent to a conflict because she did not represent the petitioner on the cases on which she had a conflict, explaining that second counsel "handled his cases. I handled mine." She acknowledged that both she and second counsel were listed as the petitioner's attorneys on the judgment forms and the plea petition but explained that those documents contained all four case numbers. She also stated that the naming of both her and second counsel on the documents as the petitioner's attorneys indicates that they were representing him separately.

Trial counsel stated that if the petitioner had elected to take his cases to trial, the four cases would have been tried separately and that she and second counsel would have represented the petitioner only for their respective cases. If the State had sought to try all of the cases together, trial counsel stated that she would have filed a motion to sever.

During cross-examination, trial counsel testified that in her 10-year career as a criminal defense attorney, she had never needed the assistance of co-counsel on a theft case. She reiterated that second counsel represented the petitioner on the two cases on which she had a conflict of interests. She denied that she brought in second counsel to assist her in the event that she became sick. Trial counsel stated that she provided the

petitioner with discovery materials, recalling that she reviewed the "very strong" evidence with him, including video surveillance footage and photographs showing the petitioner committing the offenses. She stated that, because of the petitioner's prior criminal record, he was facing significant sentencing exposure in his cases. She said that second counsel handled much of the plea negotiations because she was trying to avoid any potential conflict in negotiating a deal involving all four cases against the petitioner.

The trial prosecutor testified that he negotiated the petitioner's plea deal with second counsel only and not with trial counsel, which negotiations involved all four cases against the petitioner. He stated that he prepared the defendant's judgment forms, listing both trial counsel and second counsel as the petitioner's attorneys because trial counsel "had been on the case earlier," "had been involved in the discovery process," and was present at the plea submission hearing. He understood trial counsel to be representing the petitioner on all four cases "[o]nly in a very technical sense." At the time of the sentencing hearing, he believed that trial counsel was no longer representing the petitioner and that second counsel was his only attorney, but he thought that trial counsel was "maybe still officially a counsel of record."

During cross-examination, the prosecutor testified that he was not originally assigned to the petitioner's case and that he would not have been involved in any negotiations between trial counsel and the original prosecutor. He stated that he was aware of some conflict of counsel, but he did not know the nature of the conflict.

Second counsel testified that he was the petitioner's only attorney during his period of representation, stating that he first represented the petitioner on "one case and then it turned into four." He stated that he negotiated a global settlement for all four cases, reiterating that he was the petitioner's counsel on all of the cases.

During cross-examination, second counsel testified that at the time he represented the petitioner, he and trial counsel shared office space, "just kind of split[ting] bills for awhile." He clarified that trial counsel represented the petitioner on one case and as additional cases were brought against the petitioner, trial counsel had a conflict of interests and asked second counsel "to take the case, and I said sure." He could not specifically recall if he was the attorney of record for all four of the petitioner's cases, but stated that, because he was "definitely his lawyer on one case," he took on the other cases to "try to resolve [them] all at once." He stated that he met with the petitioner and communicated with the petitioner and his fiancée "quite a bit," adding that when trial counsel was contacted about the cases, she would give second counsel the messages, and he would follow up. Second counsel said that the only time he talked to trial counsel about the cases was when she relayed telephone messages to him and when they visited the

petitioner together to discuss the arrangement. He acknowledged that he was not present at the plea submission hearing and that trial counsel "sat in for me" during that proceeding.

Second counsel stated that his priority in representing the petitioner was to limit his sentencing exposure and avoid trying all four cases "because the likelihood of conviction would not have been with us." In his view, securing the State's agreement that the manner of service of the petitioner's 12-year sentence was to be determined by the trial court was a positive result of the plea negotiations because it allowed the petitioner to be considered for alternative sentencing. He stated that he gave the petitioner the discovery materials and discussed with him the evidence in the cases. He recalled that he told the petitioner of his right to appeal the sentence, and the petitioner "told me to appeal the sentencing hearing," but because the petitioner did not retain him for the appeal, "that's the last I heard of that."

At the close of the evidence, the post-conviction court took the matter under advisement. In its written order denying post-conviction relief, the post-conviction court found that the petitioner failed to establish "that his trial counsel was laboring under a conflict of interest," noting that trial counsel was retained for cases 2016-D-2276 and 2016-D-2218 and that no conflict existed as to those cases. The court further found that trial counsel notified the petitioner of a conflict of interests as it related to cases 2016-D-2313 and 2016-D-2399, and the petitioner elected to retain trial counsel for the two cases in which she was already involved and retained second counsel for the two cases in which trial counsel had a conflict. The court explicitly credited trial counsel and second counsel's testimonies.

In this appeal, the petitioner maintains that trial counsel performed deficiently by representing him despite an actual conflict of interests. The State contends that the post-conviction court did not err in denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S .W.2d 240, 246 (Tenn. Crim. App. 1998).

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Prejudice will be presumed in cases where the petitioner has established that his trial counsel "'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348, 350 (1980)). As the Court explained,

> [I]t is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the

-7-

ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest.

*Id.* (citation omitted). "[A]n actual conflict of interest includes any circumstances in which an attorney cannot exercise his or her independent professional judgment free of 'compromising interests and loyalties.'" *State v. White*, 114 S.W.3d 469, 476 (Tenn. 2003) (quoting *State v. Culbreath*, 30 S.W.3d 309, 312-13 (Tenn. 2000)). "The proper focus is solely upon whether counsel's conflict affected counsel's actions . . . ." *Netters v. State*, 957 S.W.2d 844, 848 (Tenn. Crim. App. 1997).

Here, the record supports the trial court's findings that trial counsel did not labor under a conflict of interests. Trial counsel's accredited testimony established that upon learning that she had a conflict of interests related to two of the petitioner's cases, she notified the petitioner of the conflict and told him that she could not represent him on those cases. Trial counsel explained to the petitioner his options, offering to refund her fee for him to obtain alternate representation. The petitioner opted to retain second counsel for the two cases on which trial counsel could not represent him, and trial counsel did not involve herself with those two cases. Trial counsel did not participate in the plea negotiations in order to avoid the conflict because the negotiations involved all four cases. Because no conflict of interests existed in trial counsel's representation, the petitioner has failed to prove that he is entitled to post-conviction relief.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE